UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
GIOVANNI PELAEZ,

                Plaintiff,                     **NOT FOR PUBLICATION**
                                                          **MEMORANDUM & ORDER**
-against-                                         09-CV-1668 (CBA) (LB)

LIFE ALERT, INC.,

                Defendant.
------------------------------------------------------------------x
AMON, United States District Judge.

      Plaintiff Giovanni Pelaez ("Pelaez," or "plaintiff"), *pro se*, filed the instant complaint, dated March 2, 2009, in New York State Supreme Court alleging that defendant Life Alert, Inc. ("Life Alert" or "defendant") discriminated against him by denying him employment based on a past felony conviction, in violation of § 8-107(10) of the New York City Administrative Code (the "New York City Human Rights Law" or "NYCHRL"). The action was removed to this Court on April 23, 2009. Diversity jurisdiction is proper under 28 U.S.C. § 1332 because the plaintiff and defendant are citizens of different states and the amount in controversy exceeds $75,000. Defendant now moves for summary judgment. For the reasons stated below, the Court grants defendant's motion.

**I.    Background**

      This case arises from plaintiff's abortive attempt to apply for a direct sales position with Life Alert in July 2007. At that time, plaintiff had a criminal record. On October 15, 1998, plaintiff pled guilty to a charge of Robbery in the First Degree. Plaintiff did not appear for his sentencing. He was arrested in 2002 on unrelated charges of assault and resisting arrest, and on

1

November 7, 2002, he was sentenced to four to eight years of imprisonment based on the first-degree robbery conviction.[1] Plaintiff was released from prison on or about December 5, 2005.

Around July 2007, Life Alert advertised a direct seller's position on Craigslist.com. The position would be on an independent contractor and commission-only basis for the sale of Life Alert's products. The advertisement described an "average" yearly commission for direct sellers of approximately $80,000 to $140,000 per year. Life Alert used an employment application form in and around July 2007 that stated the following: "PLEASE NOTE: Offer of employment is subject to outcome of all Background Checks[,]" and, "Have you ever been convicted of or are you awaiting trial for a felony or misdemeanor within the last seven years? If yes, D.O.B _____ S.S. # _____ If yes, please explain _____."

Plaintiff submitted an application for the Life Alert position in July 2007. He claims that he responded "No" to the application question asking if he had been convicted of a felony or misdemeanor in the past seven years. As stated, plaintiff pled guilty to the first-degree robbery count in 1998, more than seven years prior to applying, but he was sentenced only five years before. Life Alert apparently has no record of plaintiff's application and no record of conducting a criminal background check on plaintiff. There is no indication in the record that Life Alert was ever aware of plaintiff's criminal conviction prior to his filing the instant lawsuit.

Plaintiff states that he interviewed for the direct seller position and was advised that he had been hired. He explains that after the interview, he was told to return the following Monday to begin training. He asserts that he arrived for training as scheduled, but that on the first day of training, the Life Alert employee conducting the session informed the group that if anyone had a past conviction, they should inform Life Alert of that conviction immediately, as Life Alert

---

[1] There is no indication in the record whether plaintiff was convicted on the 2002 charges. Plaintiff states in his response papers that he in fact pled guilty to a reduced charge of disorderly conduct, N.Y. Penal Law 240.20, which is a violation, not a misdemeanor or felony.

2

would conduct a criminal background check. Plaintiff contends that the employee further stated that Life Alert would not, under any circumstances, hire someone with a criminal conviction. Plaintiff states that he asked follow-up questions, including whether the policy applied to individuals with a certificate of relief from disabilities, and that the trainer explained that it applied in all circumstances because of Life Alert's need to protect the financial information of its senior citizen clients.

Plaintiff remained for the rest of the training session that day. On or around July 13, 2007, plaintiff contacted a job placement representative from the Center for Employment Opportunities ("CEO"), an organization providing employment services to individuals with criminal records with which the plaintiff had worked in the past, requesting advice about whether to say anything to Life Alert about his criminal conviction. A CEO log entry indicates that plaintiff told a CEO representative that a Life Alert employee had informed him that, "the company will not hire anyone with a robbery conviction." (Feb. 16, 2010 Murray Decl., Ex. E.) The CEO representative states that the representative told him:

> [L]ay it out, explaining that he had been truthful on the application since it was over 7 years old, but wanting to be up front before they got their background check back. Advised him to stress that he has changed as [sic] is committed to leading a better life. Told him that even if he does this, then if the company has a strict policy he will still not get the job, but that it is still better to tell them up front than to have them hear it first from the background check.

Id. Plaintiff, however, did not return to training the following day, and took no further action to pursue the Life Alert position. Plaintiff maintains that he was "forced to leave the company because of his conviction." (Complaint ¶ 5.)

Life Alert asserts that it does not have a policy prohibiting it from employing any individual with a criminal record. Life Alert submits an affidavit from Isaac Shepher, the owner of Life Alert, who states, "Life Alert has and does hire individuals with criminal records when

3

such records are disclosed to Life Alert . . . and confirmed though a background check that is part of Life Alert's hiring process, and Life Alert conducts an analysis of whether the hiring of such individual is appropriate." (Feb. 12, 2010 Shepher Decl. ¶ 6.) Additionally, Life Alert has provided the Court with documents supporting its assertion that Life Alert has hired individuals with criminal records, in the form of redacted background checks and 1099 tax forms of the individuals that Life Alert states have been or are employed by Life Alert.[2] (Id. ¶ 7 & Ex. A.)

Life Alert also submits an affidavit from Audrey Landau, who plaintiff identified as the employee who conducted the training session that plaintiff attended. (Feb. 16, 2010 Murray Decl., Ex. A, at 33:6-16.) She states that she is a Sales Manager for Life Alert, where she has worked since 2002. She states that "[d]uring the time of my working with Life Alert, Life Alert has never had a policy like the one alleged by Plaintiff that would prohibit Life Alert from inviting someone to become a Direct Seller solely because he or she has a criminal conviction of any kind, felony or misdemeanor, at any time in their past." (Landau Decl. ¶ 9.) She further asserts that, "[b]ecause Life Alert has never had such a policy during my time with the company, I did not make the statements alleged by Plaintiff, on July 13, 2007 or any other date, that Life Alert will not hire anyone with a criminal conviction and will not consider a Certificate of Relief from Disabilities." (Id. ¶ 10.)

Plaintiff filed this action on March 2, 2009 in the New York State Supreme Court. It was removed to this Court the following month. Plaintiff contends that Life Alert discriminated against him by denying him employment because of his record of conviction, in violation of Section 8-107(10) of the NYCHRL. Defendant now moves for summary judgment.

---

[2] Life Alert has redacted these records to omit certain identifying information, including the name, address and salary of the individuals, as well as part of their social security number. Plaintiff argues that the Court cannot rely on these partially redacted documents; however, the partially redacted social security numbers on these documents allows the Court to confirm that the 1099 form matches the attached background check, and defendant has provided a declaration from Isaac Shepher authenticating the documents. (March 29, 2010 Shepher Decl. ¶¶ 4-7.)

## II. Discussion

*a. Summary Judgment Standard*

Defendant moves for summary judgment, seeking dismissal of the amended complaint in full. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 23 (1986); Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999). The Court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The court is required to view the evidence in the light most favorable to the nonmoving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Nevertheless, the non-moving party cannot rest on mere allegations or denials but must instead set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Nat'l Westminster Bank USA v. Ross, 676 F. Supp. 48, 51 (S.D.N.Y. 1987) ("[S]peculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact."). No genuine issue exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249-50 (citations omitted).

*b. New York City Human Rights Law*

Plaintiff raises a claim of discrimination pursuant to Section 8-107(10) of the NYCHRL. Plaintiff argues that he was denied employment by Life Alert after one of its employees told a group of trainees that Life Alert would not hire individuals with

5

criminal records, including both felonies and misdemeanors. Section 8-107(10) provides in pertinent part:

> It shall be unlawful discriminatory practice for any person to deny any license or permit or employment to any person by reason of his or her having been convicted of one or more criminal offenses, or by reason of a finding of a lack of "good moral character" which is based on his or her having been convicted of one or more criminal offenses, when such denial is in violation of the provisions of article twenty-three-a of the correction law.

Article 23-A of the New York Correction Law, referred to in § 8-107(10), states in § 752:

> No application for any license or employment, and no employment or license held by an individual, to which the provisions of this article are applicable, shall be denied or acted upon adversely by reason of the individual's having been previously convicted of one or more criminal offenses, or by reason of a finding of lack of "good moral character" when such finding is based upon the fact that the individual has previously been convicted of one or more criminal offenses . . .

Defendant now moves for summary judgment. Defendant argues that plaintiff cannot pursue a claim of discrimination under the NYCHRL because it was plaintiff's unilateral decision not to further pursue employment with Life Alert and, accordingly, defendant took no adverse action affecting the plaintiff. Defendant further claims that it is entitled to summary judgment because Life Alert has provided business records showing that Life Alert in fact does hire individuals with criminal records.[3]

---

[3] The parties dispute whether plaintiff was "hired" by Life Alert. In his complaint, plaintiff alleges that he was, "given the job," and that he was, "forced to leave the company because of his conviction." Additionally, during his deposition, plaintiff explained that he was advised by his interviewer that he had been hired. (Feb. 16, 2010 Murray Decl., Ex A, at 137-38.) However, it is not clear whether plaintiff was in fact ever employed by Life Alert. The job in question was an independent contractor position. Plaintiff states that as an independent contractor, he would not actually sign a direct seller's agreement with Life Alert until after he had made his first sale. He states that he would also have received other paperwork, including his employee's handbook, at that time. (Id., Ex A, at 136-38.) Defendant asserts that it has no record of his application or of completing a background check on the plaintiff. (Defs. 56.1 Stmt. ¶¶ 11, 13.) Moreover, although plaintiff claims he was verbally hired, his actual complaint is that he was told by a Life Alert employee that, "Life Alert will absolutely not hire anyone with a record of conviction." Thus, even though plaintiff appears to have made it past an initial screening interview, the Court concludes that the claim is best characterized as asserting that defendant failed to hire the plaintiff based on his record of criminal conviction. Indeed, the Correction Law relied on by the plaintiff refers to the denial of an "application" for employment. N.Y. Correction Law § 752. To the extent plaintiff contends that he was in fact hired, he would still be required to show that defendant took an adverse employment action against him.

"[D]iscrimination claims under . . . the NYCHRL are subject to the burden-shifting analysis applied to discrimination claims under Title VII." Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010). Under both laws, we begin by asking whether the plaintiff has established the "minimal" prima facie case defined by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The specifics of a prima facie case will inevitably vary and are dependent upon the type and circumstances of the employment action under attack. See McDonnell Douglas, 411 U.S. at 802 n.13. Where plaintiff is alleging that he was denied employment, plaintiff must show that (1) he is a member of a protected category; (2) he applied for an available position and was rejected; (3) he was qualified for the position; and (4) he was rejected under circumstances that give rise to an inference of discrimination. Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 (2d Cir. 2000).

   c. *Futile Gesture Doctrine*

Defendant argues that it cannot be found liable because it never denied plaintiff employment. It is undisputed that plaintiff was never formally terminated and never proceeded beyond one day of training. Instead, plaintiff acknowledges that after a Life Alert employee allegedly stated that Life Alert would not hire individuals with criminal records, he did not return for further training and took no further action to pursue employment with the company. Generally, to state a claim for failure to hire, a plaintiff is required to show that he "applied for a specific position or positions and was rejected therefrom . . . ." Brown v. Coach Stores, Inc., 163 F.3d 706, 709 (2d Cir. 1998). Here, plaintiff cannot show that he was actually rejected because he apparently did not continue to pursue employment with Life Alert.

However, where a plaintiff can prove that completing an application process would have been futile based on an employer's discriminatory practices, a potential job applicant need not

prove that he or she formally applied and was rejected. In <u>International Bhd. of Teamsters v. United States</u>, the Supreme Court explained:

> The effects of and the injuries suffered from discriminatory employment practices are not always confined to those who were expressly denied a requested employment opportunity. A consistently enforced discriminatory policy can surely deter job applications from those who are aware of it and are unwilling to subject themselves to the humiliation of explicit and certain rejection.
>
> If an employer should announce his policy of discrimination by a sign reading "Whites Only" on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs. The same message can be communicated to potential applicants more subtly but just as clearly by an employer's actual practices-by his consistent discriminatory treatment of actual applicants, by the manner in which he publicizes vacancies, his recruitment techniques, his responses to casual or tentative inquiries, and even by the racial or ethnic composition of that part of his work force from which he has discriminatorily excluded members of minority groups. When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application.

431 U.S. 324, 365-66 (1977).

Courts in this circuit and elsewhere have found that where an employer's words or actions show that an application would be futile, a prospective plaintiff need not take the step of actually completing a formal application. See <u>Brown v. McLean</u>, 159 F.3d 898, 902 (4th Cir. 1998); <u>Malarkey v. Texaco, Inc.</u>, 983 F.2d 1204, 1213 (2d Cir. 1993) (applying futile gesture doctrine to ADEA claim); <u>Pinchback v. Armistead Homes Corp.</u>, 907 F.2d 1447, 1451 (4th Cir. 1990) (applying doctrine to claim of housing discrimination); <u>Vargas v. Chubb Group of Ins. Companies</u>, No. 99 CIV. 4916(GEL), 2002 WL 31175233, at *4 & n.10 (S.D.N.Y. September 30, 2002) (applying logic of <u>Teamsters</u> where plaintiff was told she would not be considered for positions, allegedly for discriminatory reasons, before she had had a chance to formally apply for them); <u>McDermott v. Lehman</u>, 594 F. Supp. 1315 (D. Me. 1984) (allowing Title VII action for

failure to hire to proceed where plaintiff did not complete formal application process but contacted employer and was informed employer wanted to hire a younger engineer).

For example, the doctrine has been applied where an employer is aware that the individual intends to apply for a position or benefits, but nevertheless specifically tells them not to apply, allegedly for discriminatory reasons. See Breneisen v. Motorola, Inc., 512 F.3d 972, 980 (7th Cir. 2008); Vargas v. Chubb Group of Ins. Companies, No. 99 CIV. 4916(GEL), 2002 WL 31175233, at *4 (S.D.N.Y. 2002) (finding Latina plaintiff need not have actually applied for position in question where she stated her intention to apply but was told she would not be considered); U.S. v. New York State Dept. of Motor Vehicles, 82 F. Supp. 2d 42 (E.D.N.Y. 2000) (finding potential applicant need not have submitted application packet where defendants were aware of the specific nature of the plaintiff's disability, but nevertheless stated they would not employ plaintiff on the basis of that disability). In Breneisen v. Motorola, Inc., for example, the court found that an employer's denial of a tuition reimbursement could constitute an adverse employment action even though the plaintiff had not applied for such reimbursement. 512 F.3d at 980. One of the defendant's employees had told the plaintiff that her reimbursement had been denied because of the plaintiff's use of Family and Medical Leave Act ("FMLA") leave.[4] Id. The employee claimed that she in fact had no authority over reimbursement, but the court excused the plaintiff's failure to apply for the reimbursement on the ground that the plaintiff had reason to believe that applying would be a futile act. Id.

However, courts have expressed concern about the application of Teamsters to cases where the inference of discrimination is unduly speculative. As the Second Circuit explained in Brown v. Coach Stores, "the leniency afforded individual plaintiffs [in Teamsters] . . . hinged on

---

[4] FMLA protects employees from being discriminated or retaliated against for exercising their FMLA rights. Id. at 978; 29 U.S.C. §§ 2615(a)(2), 2615(b).

9

an initial finding of a history of discrimination by the employer to the class of plaintiffs." Coach Stores, 163 F.3d at 711. In cases where there is no class-wide finding of discrimination, application of the futility rule is more problematic. Thus, the court quoted an employment law treatise in stating:

> 'In an individual disparate treatment suit, the fact of application, along with the other elements of a prima facie case, is used to prove both the existence of discrimination and the consequential injury to the plaintiff. . . . It would be unthinkable to routinely permit non-applicant plaintiffs in individual suits to recover back pay, retroactive seniority, and the like based on what amounts to *mere speculation* that they would have been rejected for discriminatory reasons had they applied.'

Id. at 711 (emphasis added) (quoting 1 Lex K. Larson, Employment Discrimination § 8.02[2], at 8-30-8-31 (2d Ed. 1997)). Although the court in Coach Stores assumed for the purposes of argument that an individual plaintiff could assert a claim of futility, the court nevertheless found the plaintiff's claim too attenuated, as she did not plead specific positions to which she would have applied. Id. at 711-12. In the absence of a claim that the plaintiff would have applied for specific positions, the court explained that evidence indicating that she was otherwise comfortable requesting promotion, "belie[d] the notion that a specific application would have been in vain." Id. at 712.

Likewise, cases have required some showing that a plaintiff would in fact have been discriminated against had he applied for the position or benefit in question. As the court explained the test in Brown v. McLean, 159 F.3d 898, 902 (4th Cir. 1998), "a plaintiff who has failed to apply for a job may still carry his burden of proof if he can demonstrate that he would have applied but for *accurate knowledge* of an employer's discrimination and that he *would have been discriminatorily rejected had he actually applied*." (emphasis added) (quotations and citations omitted); see also Lewis v. Tobacco Workers' Intern. Union, 577 F.2d 1135 (4th Cir.

10

1978); Bass v. City of Tacoma, 953 P.2d 129 (Wash. App. Div. 2 1998) ("The courts did not go so far as to hold that discriminatory treatment of a plaintiff can be inferred from an announced intent to discriminate, unaccompanied by an actual employment decision adverse to the plaintiff or anyone else in the plaintiff's protected class.").

Thus, in Jackson-Bey v. Hanlamaier, 115 F.3d 1091 (2d Cir. 1997), the court rejected a plaintiff's contention that complying with a prison's religious registration requirement would have been futile in spite of an official policy that did not recognize plaintiff's religious sect because the evidence showed that had plaintiff complied with the requirement he may in fact have been accommodated. Id. at 1096-98. The plaintiff was a member of the Moorish Science Temple ("MST"), an Islamic sect, and was not allowed to wear the traditional funeral garments of that sect when his father passed away. Id. at 1093. Plaintiff argued that the prison's failure to accommodate his religious beliefs violated his constitutional rights, but the court found that because the plaintiff had failed to comply with the prison's registration requirement, pursuant to which he may have been accommodated, his alleged injury was self-inflicted and thus insufficient for standing. Id. at 1095-98.

The plaintiff argued that complying with the prison's registration requirement would have been futile. Id. at 1096. Indeed, official prison policy and prison documents showed that, at that time, the prison did not recognize the MST as a religious sect and specifically forbade prisoners from wearing the funeral grab in question. Id. at 1096. Nevertheless, applying Teamsters, the court rejected the plaintiff's argument that registration would have been futile, explaining that "an unsupported claim of futility is not enough to excuse a plaintiff's failure to apply." Id. at 1096. The court found persuasive evidence submitted by the defendants showing that had the plaintiff attempted to register, his request may nevertheless have been

11

accommodated. Id. at 1097-98. Thus, the court held that plaintiff's failure to complete the application process in question was fatal to his claim. Id. at 1098.

*d. Application*

The Court assumes that Teamster's futile gesture doctrine applies to non-applicant plaintiffs in individual suits. Nevertheless, the Court finds unduly speculative plaintiff's argument that actually completing the application process would have been futile. Accepting as true for purposes of this motion plaintiff's allegation that an employee informed him that Life Alert would not hire individuals with criminal records, plaintiff has nevertheless failed to submit any evidence that Life Alert in fact discriminated against him or any other individual on the basis of their criminal history. Moreover, Life Alert has provided competent proof showing that plaintiff's application would not have been futile. Affidavits from Isaac Shepher and Audrey Landau state that Life Alert does not, in fact, have a blanket policy of excluding from employment individuals with criminal records, and Life Alert has submitted employment records showing that individuals with criminal records have been hired in the past.

Nor is this a case where defendant had actual knowledge of the facts surrounding plaintiff's protected status and nevertheless stated that he should not pursue employment. See Breneisen v. Motorola, Inc., 512 F.3d 972, 980 (7th Cir. 2008); U.S. v. New York State Dept. of Motor Vehicles, 82 F. Supp. 2d 42 (E.D.N.Y. 2000). Plaintiff does not dispute that he never informed any Life Alert representative of his criminal history. (Def. 56.1 ¶ 14.) Unlike in Breneisen or Motor Vehicles, then, plaintiff cannot show any direct tie between knowledge of protected status and the statement in question, evincing proof of an intent to discriminate in fact.

Indeed, the speculative nature of plaintiff's claim is even more problematic in the context of a claim brought under § 8-107(10). It is not the case, as in a claim of racial discrimination,

that an individual's criminal record is always an impermissible factor to consider in making employment decisions. Instead, under New York Correction Law § 752, there are exceptions to the general rule that an employer may not refuse to hire an individual on the basis of that individual's criminal record, where:

> (1) there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held by the individual; or
>
> (2) the issuance or continuation of the license or the granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public.

Id. New York Correction Law § 753 then delineates factors that an employer must considered in determining whether a person falls within one of those exceptions.[5]

In this case, plaintiff pled guilty to First Degree Robbery in 1998. Plaintiff states that the robbery occurred in 1998 (Feb. 16, 2010 Murray Decl., Ex. A, at 70), and that he was 19 years old in 1997, making him around 20 years old at the time he committed the offense in question. (Id., Ex. A, at 55.) As plaintiff did not appear for sentencing, he was not incarcerated until 2002. Although plaintiff alleges that when he went for training in July 2007, he asked about the effect of a certificate of relief from disabilities on his application, plaintiff does not dispute that he did not have such a certificate at that time.

---

[5] They include: "(a) The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses. (b) The specific duties and responsibilities necessarily related to the license or employment sought or held by the person. (c) The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities. (d) The time which has elapsed since the occurrence of the criminal offense or offenses. (e) The age of the person at the time of occurrence of the criminal offense or offenses. (f) The seriousness of the offense or offenses. (g) Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct. (h) The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public." N.Y. Corrections L. § 753(1). Under N.Y. Corrections L. § 753(2), a certificate of relief from disabilities creates a presumption of rehabilitation in regard to the offense.

13

Defendant has not submitted substantial information about the job in question. However, in a declaration submitted by defendant, Isaac Shepher, the owner of Life Alert, states:

> Life Alert markets and sells emergency response system and home security systems to the public for their safety and security. In order to provide these services to its customers, Life Alert typically obtains social security numbers, credit card information, and locations of keys or access codes to its customers' homes.

(Feb. 12, 2010 Shepher Decl. ¶ 3.) Plaintiff himself contends that the trainer allegedly informed him that Life Alert asked about criminal convictions because, "they have to protect the senior citizens and their credit cards and all that information that's privileged, and all that stuff." (Feb. 16, 2010 Murray Decl., Ex. A, at 40-41.) Although the issue has not been briefed, it is at least plausible that plaintiff's criminal history would, in fact, have been a legitimate factor to consider in a decision of whether or not to hire him. However, in the absence of evidence of a specific, adverse employment action against plaintiff or any other individual, it cannot be determined whether defendant was permissibly applying the exceptions noted above.

Thus, as plaintiff himself decided not to further pursue the Life Alert position and there is no evidence that Life Alert was even aware of his criminal record, the Court finds plaintiff's contention that he was "denied" employment based on that record too speculative and removed from any actual act of discrimination. Accordingly, defendant's motion for summary judgment is granted.[6]

*e. Sanctions*

Both parties move for Rule 11 sanctions. "A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well

---

[6] As the Court grants defendant's motion based on the underlying claim, the Court need not address defendant's arguments regarding damages.

grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." Kropelnicki v. Siegel, 290 F.3d 118, 131 (2d Cir. 2002) (citations and quotation marks omitted). "Even if the district court concludes that the assertion of a given claim violates Rule 11, . . . the decision whether or not to impose sanctions is a matter for the court's discretion." Perez v. Posse Comitatus, 373 F.3d 321, 325 (2d Cir. 2004). The Court finds that both parties' contentions regarding sanctions are without merit.

### III. Conclusion

For the foregoing reasons, defendant's motion for summary judgment is granted. Both parties' motions for Rule 11 sanctions are denied. The Clerk of the Court is directed to enter judgment in accordance with this Order and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
      March 30 , 2011

/Signed by Judge Amon/

Carol Bagley Amon
United States District Judge

Copy mailed to:
Giovanni Pelaez
137-05 130th Avenue
Jamaica, NY 11436